# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN VALDEZ, | 1:10-cv-00772-JLT HC |
| Petitioner, | FINDINGS AND RECOMMENDATIONS TO GRANT  RESPONDENT'S MOTION TO DISMISS (Doc. 9) |
| v. | |
| NEIL H. ADLER, | ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY DAYS |
| Respondent. | ORDER DIRECTING CLERK OF COURT TO ASSIGN CASE TO A U.S. DISTRICT JUDGE |

## **PROCEDURAL HISTORY**

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

The instant petition for writ of habeas corpus was filed on May 3, 2010.  (Doc. 1).  The petition challenges the results of a February 9, 2010 prison disciplinary hearing finding Petitioner guilty of being in the possession of legal documents belonging to another inmate and of corresponding with another inmate without prior authorization.  (Doc. 9, Ex. A.).  As a result of the hearing, Petitioner was sanctioned with 60 days's loss of commissary privileges and 60 days' loss of phone privileges.  (Id., Ex. B).   Petitioner raises three claims for relief: (1) Respondent violated Petitioner's due process rights by not providing him with a copy of the disciplinary charges within twenty-four hours; (2) violating Petitioner's due process rights by not separately charging and

punishing him on the basis of a single incident report; and (3) some participants in the disciplinary hearing were not authorized to conduct such hearings.  (Doc. 1, pp. 3, 5a).

On August 4, 2010, Respondent filed the instant motion to dismiss, contending that Petitioner's claims failed on their merits.  (Doc. 9).  To date, Petitioner has not filed an opposition to the motion to dismiss.

**DISCUSSION**

A.  Jurisdiction

Relief by way of a writ of habeas corpus extends to a person in custody under the authority of the United States. See 28 U.S.C. § 2241. While a federal prisoner who wishes to challenge the validity or constitutionality of his conviction must bring a petition for writ of habeas corpus under 28 U.S.C. § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. See, e.g., United States v. Giddings, 740 F.2d 770, 772 (9th Cir.1984); Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990). To receive relief under 28 U.S.C. § 2241 a petitioner in federal custody must show that his sentence is being executed in an illegal, but not necessarily unconstitutional, manor. See, e.g., Clark v. Floyd, 80 F.3d 371, 372, 374 (9th Cir. 1995) (contending time spent in state custody should be credited toward federal custody); Jalili, 925 F.2d at 893-94 (asserting petitioner should be housed at a community treatment center); Barden, 921 F.2d at 479 (arguing Bureau of Prisons erred in determining whether petitioner could receive credit for time spent in state custody); Brown, 610 F.2d at 677 (challenging content of inaccurate pre-sentence report used to deny parol).

Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  Petitioner's claims arise out of a disciplinary hearing conducted on February 9, 2010, after which the DHO found that Petitioner had committed the prohibited acts of being in the possession of legal documents belonging to another inmate and of corresponding with another inmate without prior authorization.  (Doc. 9, Ex. A).  Here, Petitioner is challenging the result of a prison disciplinary hearing that resulted in a loss of privileges.  Thus, he is challenging the execution of his sentence, which is maintainable only in a habeas corpus proceeding.  Tucker v. Carlson, 925 F.2d 330, 331 (9th Cir. 1990).  Furthermore, because Petitioner is challenging the execution of his

2

1    sentence at Taft Correctional Institution ("TCI"), and TCI is within the Eastern District of California,

2    Fresno Division, this Court has jurisdiction over the petition.  See Brown v. United States, 610 F.2d

3    672, 677 (9th Cir. 1990).

4         B.  Procedural Grounds for Motion to Dismiss

5         Respondent has filed a motion to dismiss the petition for failure to state a claim upon which

6    relief can be granted pursuant to Fed. R. Civ. Proc. 12(b)(6).  (Doc. 9).   Along with the motion,

7    Respondent has submitted various documents, including the Disciplinary Hearing Officer's

8    ("DHO") report, the original incident report, and the results of various administrative appeals

9    initiated by Petitioner.  (Doc. 9 and attached Exhibits).   Reading Respondent's arguments and

10   submitted exhibits, it is clear that Respondent is arguing the merits, or lack thereof, of Petitioner's

11   claims, not merely a procedural deficiency such as lack federal jurisdiction or failure to state a claim.

12   This necessarily raises the question whether, procedurally, a motion to dismiss pursuant to Rule

13   12(b)(6) is the appropriate legal vehicle for challenging the merits of the petition.

14        Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition

15   if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is

16   not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.[1]

17   The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if the

18   motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's

19   procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to

20   evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d

21   599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state

22   procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same).

23   Thus, a respondent can file a motion to dismiss after the Court orders a response, and the Court

24   should use Rule 4 standards to review the motion.  See Hillery, 533 F. Supp. at 1194 & n. 12.

25        As discussed above, the Rules Governing Section 2254 Cases do not expressly provide for

26

27       [1]The Rules Governing Section 2254 Cases may be applied to petitions for writ of habeas corpus other than those
     brought under § 2254 at the Court's discretion.  See, Rule 1 of the Rules Governing Section 2254 Cases. Civil Rule 81(a)(2)
28   provides that the rules are "applicable to proceedings for . . . habeas corpus . . . to the extent that the practice in such
     proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice of civil actions."
     Fed. R. Civ. P 81(a)(2).

3

1   motion practice; rather, such motion practice must be inferred from the structure of the rules

2   themselves.  Hillery, 533 F.Supp. at 1195.  For example, Rule 11 provides as follows:

3           The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any
        statutory provisions or these rules, may be applied to a proceeding under these rules.

4

5   Rule 11 of the Rules Governing Section 2254 Cases. (Emphasis supplied).  Because of the peculiar

6   and unique nature of habeas proceedings, as a general rule, neither Rule 12(b)(6) nor summary

7   judgment motions under Rule 56 are particularly appropriate.  Given the nature of a habeas corpus

8   petition, Anderson v. Butler, 886 F.2d 111, 113 (5th Cir. 1989) (modern habeas corpus procedure

9   has the same function as an ordinary appeal); O'Neal v. McAnnich, 513 U.S. 440, 442, 115 S.Ct. 992

10   (1995) (federal court's function in habeas corpus proceedings is to "review errors in state criminal

11   trials"(emphasis omitted)), motions for summary judgment are unnecessary because petitions may be

12   decided immediately by the Court following submission of the pleadings provided no material issues

13   of fact exist.  See, 1 J. Liebman, *Federal Habeas Corpus Practice and Procedure*, § 17.3 (1988)

14   (The habeas corpus statute authorizes -- indeed, it seems to *require* -- the court treat the petition itself

15   as the equivalent of a petitioner initiated summary judgment motion).

16           Similarly, a Rule 12(b)(6) motion attacking the sufficiency of the pleading in the petition

17   does not comfortably fit within the habeas landscape either.  *In filing a response in the form of a*

18   *Rule 12(b)(6) motion rather than an Answer, it appears to the Court that Respondent does not fully*

19   *appreciate the unique requirements of habeas proceedings.*[2]  Nevertheless, the Court is still of the

20   opinion that denying Respondent's motion to dismiss solely on narrow procedural grounds and then

21   requiring Respondent to file an answer that would, in all likelihood, raise the same issues and rely on

22   the same evidence, would be an inefficient use of the parties' time as well as the Court's resources.

23   Instead, the Court has the inherent power under the Rules Governing Section 2254 Cases to construe

24   _____

25       [2]The Court notes that, on at least three separate occasions in these chambers, Respondent's counsel has chosen, in
    lieu of filing traditional answers, to file motions to dismiss under Rule 12(b)(6), that challenge the merits of the inmates'
    petitions. See case nos. 1:09-cv-00831-AWI-JLT; 1:09-cv-00183-JLT; and 1:09-cv-01753-AWI-JLT.  In each of those cases,

26   as in this case, the Court has attempted to tactfully dissuade Respondent's counsel from filing a merits answer disguised as
    a motion to dismiss.  See id.  Unfortunately, it does not appear that Respondent's counsel has received the message.

27   Therefore, the Court will be less circumspect in its approach here by suggesting that, **if counsel continues to file motions
    to dismiss that are, in reality, answers, the Court will take additional measures including, but not limited to, issuing**

28   **Orders to Show Cause re: Sanctions and/or denying the motions on procedural grounds**.  Counsel is **ORDERED** to
    examine and know the Rules according to which these matters proceed.

                                            4

1   Respondent's motion to dismiss as an answer on the merits and Petitioner's opposition to the motion

2   to dismiss as a traverse.  So construing the filings, the Court would then be in a position to rule on

3   the merits of the petition without the need for further development of the record or additional

4   briefing.

5       Such an approach, while cumbersome, is nevertheless not entirely inconsistent with the Rules

6   Governing Section 2254 Cases.  Historically, habeas practice provided only two dispositions for

7   petitions: summary dismissal or a full hearing.  Hillery, 533 F.Supp. at 1196.  However, the drafters

8   of the present Rules Governing Section 2254 cases believed that, in some instances, an intermediate

9   process, through the device of an expanded record under Rule 7 might be advantageous.  Id.  "The

10  purpose [of Rule 7] is to enable the judge to dispose of some habeas petitions not dismissed on the

11  pleadings, without the time and expense required for an evidentiary hearing...Authorizing expansion

12  of the record will, hopefully, eliminate some unnecessary hearings."  Advisory Committee Note to

13  Rule 7.

14      In effect, Respondent has sought to expand the record beyond the petition by attaching

15  exhibits in the form of additional documents that bear upon the disciplinary hearing that lies at the

16  heart of this case.  Petitioner does not dispute the authenticity of these documents.  From all of these

17  documents and arguments, no disputed issues of fact have emerged; rather, both Respondent's and

18  Petitioner's arguments are entirely legal ones.   By filing this motion to dismiss, Respondent has

19  clearly evidenced its belief that the present record, as presently constituted, is sufficient for this

20  Court to determine the merits of the case.   Petitioner, by failing to file any opposition whatever,

21  apparently does not dispute Respondent's request that the merits of the petition be decided on the

22  motion to dismiss.   Under those circumstances, the Court reluctantly agrees that there are no

23  controverted issues of fact, that the present record is sufficient as presently constituted, and that no

24  additional evidence is required for the Court to reach a decision on the merits of the petition.

25      Accordingly, the Court will construe Respondent's motion to dismiss as an answer on the

26  merits.  Having resolved that procedural tangle, hopefully for the last time, the Court now turns to

27  the issues raised in the motion to dismiss.

28

1    C.  Petitioner's Claims Are Without Merit.

2         1.  Failure To Provide Petitioner With A Timely Copy Of The Charges.

3         Petitioner contends initially that he was denied due process due to Respondent's failure to

4    provide him with a copy of the charges within twenty-four hours.  Respondent argues that it met the

5    twenty-four-hour rule.  The Court agrees with Respondent.

6         The record indicates that on January 27, 2010, at 2:15 p.m., Correctional Officer Dickey

7    issued an "incident report" charging Petitioner with the prohibited act of possession of property

8    belonging to another person.  (Doc. 1, p. 18).  That "incident report" indicates that Petitioner was

9    served with the report later that day at 11:22 p.m.  (Id.).  Petitioner does not argue that this initial

10   "incident report" was untimely served.  (Doc. 1, p. 3a).  The record further indicates, however, that

11   this report was never placed into Respondent's computer system and was never processed as an

12   actual incident report.  (Doc. 1, p. 14).

13        On February 4, 2010, at 2:10 p.m., another incident report was issued charging Petitioner

14   with both possession of property belonging to another person as well as "possession of anything not

15   authorized for retention or receipt by the inmate and not issued to him through regular channels."

16   (Doc. 1, p. 17).  Petitioner was served with a copy of this incident report that same day at 3:10 p.m.

17   (Id.).

18        Petitioner maintains that, by waiting a full week after the initial incident to charge him with

19   this latter incident report, which is based upon the same facts as contained in the original incident

20   report, Respondent has violated due process by delaying longer than twenty-four hours.  For the

21   reasons set forth below, the Court disagrees.

22        Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be

23   diminished by the needs and objectives of the institutional environment.  Wolff v. McDonnell, 418

24   U.S. 539, 555, 94 S. Ct. 2963 (1974).  Prison disciplinary proceedings are not part of a criminal

25   prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings.  Id. at 556.

26   Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a

27   prison.  Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), citing Superintendent, etc. v. Hill,

28   472 U.S. 445, 454-455, 105 S. Ct. 2768 (1984).

1    However, when a prison disciplinary proceeding may result in the loss of good time credits,

2    due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the

3    disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional

4    goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement

5    by the fact-finder of the evidence relied on and the reasons for the disciplinary action.  Hill, 472 U.S.

6    at 454; Wolff, 418 U.S. at 563-567.  In addition, due process requires that the decision be supported

7    by "some evidence."  Hill, 472 U.S. at 455, citing United States ex rel. Vatauer v. Commissioner of

8    Immigration, 273 U.S. 103, 106 (1927).

9    Program Statement § 5270.08, Discipline and Special Housing Units, contains a page

10   entitled, "Time Limits In Disciplinary Process."  Program Statement § 5270.08, Chap. 2, p. 2.  That

11   page indicates that the time period between when the staff becomes aware of an inmate's

12   involvement in an incident and the time the staff gives the inmate notice of the charges by delivering

13   to him a copy of the Incident Report is "ordinarily a maximum of 24 hours."  Id.

14   The incident report dated February 4, 2010, indicates that "staff became aware of incident" as

15   of February 4, 2010 at 2 p.m.  (Doc. 1, p. 17).  Nothing in the record contradicts this evidence.  The

16   incident report of February 4, 2010 also indicates that, subsequent to Dickey's initial discovery of a

17   possible rules violation on January 27, 2010, the DHO conducted an investigation into possible

18   charges and, on February 3, 2010, interviewed Petitioner, who admitted to having legal documents of

19   another inmate in order to help with their preparation.  (Id.).  The incident report indicates that the

20   DHO continued to investigate the case until concluding the investigation the following day, i.e.,

21   February 4, 2010, at approximately 2 p.m., at which time the DHO issued the incident report referred

22   to above.  (Id.).  As mentioned, Petitioner was notified of the new incident report approximately one

23   hour after it was issued.

24   In Petitioner's administrative appeal from the disciplinary hearing to the warden's level, the

25   warden concluded that the first "incident report" was a nullity since it was never filed nor processed

26   and that, therefore, only one incident report had been issued, i.e., the one filed on February 4, 2010.

27   (Doc. 1, p. 14).  Petitioner presents no evidence to the contrary and the Court finds no evidence to

28   contradict the warden's findings in this regard.  Moreover, that incident report indicates that the

7

1   DHO investigated the case from the date of the original infraction until February 4, 2010, at which

2   time he issued the incident report and, almost simultaneously, served a copy of it on Petitioner.

3   Accordingly, the Court finds that Respondent complied with the Program Statement requirement that

4   Petitioner be notified of the charges within twenty-four hours of staff becoming aware of them.

5            B.   <u>Failure To Separately Charge And Punish Petitioner Based On A Single Incident Report</u>.

6            Petitioner next contends that his due process rights were violated when Respondent charged

7   and punished him for two separate violations arising out of the same nucleus of facts and containing

8   the same elements.  (Doc. 1, p. 4a).  The Court disagrees.  Program Statement § 5270.08, provides in

9   part as follows:

10          Separate sanctions may be imposed for separate acts or offenses.  Acts are different or
            separate if they have different elements to the offenses...The inmate can be separately charged
11          and punished, on the basis of one Incident Report, or in two separate Incident Reports, for
            each offense."
12

13   Program Statement § 5270.08, Chap. 4, p. 18.

14          In the Incident Report dated February 4, 2010, Petitioner was charged with violations of two

15   separate prohibited acts, as identified in Code 305 and 410.  (Doc. 1, p. 17).  A prohibited act under

16   Code 305 is defined as, "Possession of anything not authorized for retention or receipt by the inmate,

17   and not issued to him through regular channels."  Program Statement § 5270.08, Chap. 4, p. 10.  A

18   prohibited act under Code 410 is defined as "unauthorized use of mail."  <u>Id</u>., p. 13.

19          Although even a cursory reading of these two prohibited acts suggests obvious elemental

20   differences, Respondent correctly points out that they also have their basis in separate prison policies

21   and Program Statements.  By possessing another inmate's legal work in his personal property,

22   Petitioner violated Program Statement § 1315.07, p. 12.  (Doc. 9, Ex. D).  That policy provides, in

23   pertinent part, that "an inmate may possess another inmate's legal materials while assisting the other

24   inmate in the institution's main law library and in another location if the Warden so designates."  <u>Id</u>.

25   The inmate is specifically prohibited from removing the assisted inmate's legal materials from the

26   law library.  <u>Id</u>.

27          By possessing a letter from another inmate, Petitioner was guilty of violating the prohibition

28   against corresponding with another inmate regarding legal work without proper authorization.  This

8

1   violated Program Statement § 5265.11, which governs restrictions on mail received and sent by

2   prison inmates.

3        Because one prohibited act involves possession of another inmate's legal work while the

4   other prohibited act involves unauthorized use or possession of mail, the two prohibited acts,

5   although arising out of single nucleus of common fact, involve separate and distinct legal elements

6   and require distinct types of proof to satisfy those elements.  Program Statement § 5270.08 expressly

7   provides that, in such a circumstance, an inmate may be charged with both prohibited acts in one

8   Incident Report or separately in separate Incident Reports.  Program Statement § 5270.08, chap. 4, p.

9   18.  Here, Respondent chose the former option.  Petitioner has failed to show how Respondent, in

10  proceeding in such a manner, has violated his federal due process rights.  Accordingly, the Court

11  concludes that Petitioner's claim in this regard is without merit.

12       C.  <u>Authorization Of Barajas And Romero To Conduct Hearing</u>.

13       Lastly, Petitioner contends that Counselor Barajas and Case Manager Romero were not

14  vested with the authority to conduct hearings and impose disciplinary sanctions since they do not

15  have Unit Disciplinary Committee certification pursuant to Program Statement § 5270.08.  (Doc. 1,

16  p. 8).  Respondent, while acknowledging that there is no paperwork certification, nevertheless asserts

17  that Barajas and Romero had taken and passed the UDC certification examination and therefore

18  Petitioner's claim is without merit.  (Doc. 9, p. 6).  The Court again agrees with Respondent.

19       Program Statement § 5270.08 provides that "[a] staff member may not sit on the Unit

20  Discipline Committee (UDC) without first successfully completing the self-study program for UDC

21  certification.  The program involves completion of a series of training modules."  Program Statement

22  § 5270, 08, chap. 6, p. 5.

23       Respondent has submitted the Declaration of Dale Patrick, an Administrative Remedy

24  Coordinator at TCI, who has declared under oath that both Counselor Barajas and Case Manager

25  Romero are certified and authorized to conduct UDC hearings.  (Doc. 9, Ex. 7).  Patrick indicates

26  that TCI has not issued paperwork expressly stating that Barajas and Romero are certified but asserts

27  that his interpretation of the Program Statement is that no such paperwork is required.  (<u>Id</u>.).

28       As indicated from the excerpt of Program Statement § 5270.08 set forth above, the only

9

requirement is that the individuals sitting on the UDC have undertaken and successfully completed the self-study program for UDC certification.  Nothing in the Program Statement requires that a physical document showing certification be prepared or issued to recipients.  Based on the declaration of Dale Patrick, it is undisputed that Barajas and Romero had successfully completed the certification exam as required by the Program Statement.  Accordingly, the Court concludes that Petitioner's claim in this regard is without merit.

### ORDER

For the foregoing reasons, the Court HEREBY DIRECTS the Clerk of the Court to assign the case to a United States District Judge.

### RECOMMENDATIONS

For the foregoing reasons, the Court HEREBY RECOMMENDS as follows:

1.     Respondent's motion to dismiss the petition (Doc. 9) should be GRANTED;

2.     The petition for writ of habeas corpus (Doc. 1), should be DENIED on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty (20) days after being served with a copy of this Report and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed within fourteen days after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **November 19, 2010**                                    **/s/ Jennifer L. Thurston**
                                                              UNITED STATES MAGISTRATE JUDGE